UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

Case No. 13-CR-20248

v.

HON. MARK A. GOLDSMITH

STEVEN SCOTT SMILEY, JR.,

        Defendant.

_____/

## OPINION AND ORDER OVERRULING DEFENDANT'S SENTENCING OBJECTIONS

### I. INTRODUCTION

Indicted on three counts for felon-in-possession, 18 U.S.C. § 922(g)(1), Defendant Steven Scott Smiley, Junior, entered into a plea agreement on April 25, 2013. Plea Agreement (Dkt. 25). On October 1, 2013, the Court held an evidentiary hearing for Defendant's sentencing and heard argument on Defendant's objections to his sentencing. The Court requested memoranda on the parties' positions, which have been submitted. Mems. (Dkts. 43, 44, and 46). In particular, Defendant objects to the use of hearsay evidence in determining his sentence. Defendant further objects to the application of a U.S. Sentencing Guidelines provision, § 2K2.1(c)(1), which would result in an enhanced sentence. For the reasons that follow, the Court overrules Defendant's objections.

### II. BACKGROUND

At the evidentiary hearing, two witnesses testified: Denise Ford and Special Agent Thomas Sondgeroth of the FBI. Ford, a property manager for the Atherton East apartment complex in Flint, Michigan, testified to what she witnessed on the morning of September 12, 2012. 10/1/13 Tr. 13-14 (Dkt. 42). Ford stated that she was walking the grounds of the

complex, when she observed four men near building 11 – two at either end. Id. at 15. Ford thought that this was "a little unusual because it was kind of early in the morning." Id. One of the individuals was Defendant, and the other three individuals were his friends or associates. Id. at 23-24. None of the four men resided at the complex. Id. at 23, 28.

Soon after she had observed the four men, Ford testified that she heard male voices screaming about some speakers. Id. at 15. Ford, who was then inside an apartment building, looked outside and saw an incident about 20 to 25 feet away without anything obstructing her view. Id. at 21. Ford stated that she saw Defendant and another man hitting a fifth man, inside of the driver door of a vehicle "saying, you know, MF, give me my speakers . . . ." Id. at 15. Ford recognized the fifth man as the boyfriend of one of the complex's residents – Iesha Kuszmaul. Id. at 15, 17. Ford explained that "I could see, you know, [Defendant and the other man] hitting" the boyfriend, who was "trying to fight back." Id. at 24.

Ford further explained that the boyfriend managed to get into his vehicle and drive away "and that's when [Defendant] and the other guy was shooting at the truck . . . ." Id. at 17. Ford further explained that she saw Defendant point a firearm toward the vehicle and shoot the firearm at it. Id. at 26-27. Ford testified that Defendant aimed his firearm at the windshield of the vehicle, while the boyfriend was in the driver's seat. Id. at 45. Ford stated that Defendant fired at least one shot at the windshield and heard more shots being fired by either Defendant or his associate after the vehicle had spun around and drove away. Id. at 45, 47-48. After these shots were fired, Kuszmaul came out of building 11, ran after the vehicle, got into the driver's seat, and drove off with Thompkins. Id. at 19-20, 28-29.

Special Agent Tom Sondgeroth of the FBI also testified at the evidentiary hearing. Sondgeroth stated that he conducted an investigation into the incident and interviewed Ryan

2

Thompkins and Kuszmaul. According to Sondgeroth, Thompkins stated that he had woken up the morning of September 12, 2012 at an apartment at the complex and went outside to go to his vehicle. Id. at 57-58. As Thompkins walked to his vehicle, he heard footsteps behind him and before he could turn to look, he was struck in the back of the head. Id. at 58. When he turned, he saw Defendant striking him with a handgun. Id. After being struck in the head, Thompkins fell to the ground and fought with defendant. Id. In his statement to Sondgeroth, Thompkins said that Defendant and another individual were kicking and punching Thompkins on the ground. Id. At some point, although the sequence of actions is unclear, Defendant pointed his handgun at Thompkins' head. Id. at 59-60. However, Kuszmaul, who had by this time exited the apartment, struck Defendant's hand and prevented Defendant from shooting Thompkins. Id. at 58. Sondgeroth testified that Thompkins explained that he took this opportunity to enter his vehicle and flee. Id. at 59. As Thompkins drove away, in reverse, Defendant aimed his gun at the windshield and fired at the vehicle. Id. at 59. Thompkins stated that he drove a short distance in the parking lot, Kuszmaul then got into the vehicle and drove Thompkins drove away. Id.

Kuszmaul also provided a statement to Sondgeroth. Sondgeroth testified that Kuszmaul had stated that she was inside her residence and saw a group of people, including Defendant, approaching Thompkins. Id. at 62. Kuszmaul then went outside and saw Thompkins being beaten up and intervened by getting Defendant and the other people off of Thompkins. Id. Defendant then pointed a handgun at Thompkins. Id. at 63. In an effort to disrupt the shooting, Kuszmaul stood in front of Defendant. Id. at 62-63. Defendant told Kuszmaul to get out of the way and then went to the front of the vehicle and fired his gun at the windshield, behind which Thompkins was seated. Id. at 62. Kuszmaul then ran toward the vehicle, entered, and drove Thompkins away from the scene. Id.

3

Additionally, the Government presented photographs at the hearing. The photographs show bullet holes in Thompkins' vehicle, including a hole in the windshield. Id. at 53-54.

## III. ANALYSIS

### A. Evidentiary Standards

Defendant objects to his sentence being enhanced without using the standard of beyond a reasonable doubt. Def.'s Mem. at 1-13 (Dkt. 44). Defendant also argues that the Court should not consider hearsay introduced at the evidentiary hearing. Id. at 13-14. In response, the Government argues that courts are permitted to rely on hearsay evidence in determining an appropriate guideline range and that the proper standard is preponderance of the evidence. Gov't Mem. at 9-13 (Dkt. 43). The Court rejects Defendant's argument and agrees with the Government.

With regard to the proper evidentiary standard used at sentencing, the appropriate the standard is preponderance of the evidence. United States v. Gates, 461 F.3d 703, 708 (6th Cir. 2006) (finding "that judicial fact-finding in sentencing proceedings using a preponderance of the evidence standard . . . does not violate either Fifth Amendment due process rights, or the Sixth Amendment right to trial by jury"). Therefore, the Court shall apply a preponderance of the evidence standard.

As to the nature of the evidence considered by the Court, it is well-established that "hearsay evidence is admissible at sentencing." United States v. Moncivais, 492 F.3d 652, 658 (6th Cir. 2007). Such evidence, however, must have a "minimum indicia of reliability." U.S.S.G. § 6A1.3(a); United States v. Silverman, 976 F.2d 1502, 1512 (6th Cir. 1992) ("The district court may consider hearsay evidence in determining sentence, but the accused must be given an opportunity to refute it, and the evidence must bear some minimal indicia of reliability

in respect of defendant's right to due process.") (quotation omitted). This is "a relatively low hurdle." United States v. Greene, 71 F.3d 232, 235 (6th Cir. 1995). Only "some evidentiary basis beyond mere allegation in an indictment [must] be presented to support consideration of such conduct as relevant to sentencing." Silverman, 976 F.2d at 1512 (quotation omitted).

At the evidentiary hearing for Defendant's sentencing, the Government presented hearsay evidence in the form of out-of-court statements made by Thompkins and Kuszmaul. This hearsay was permissible. Moncivais, 492 F.3d at 658. Importantly, the hearsay statements were corroborated in several ways: (i) Defendant pled guilty to possessing a firearm on September 12, 2012, the date both witnesses stated the encounter with Defendant occurred; (ii) Ford's testimony that she witnessed Defendant's altercation with Thompkins; (iii) photographs of Thompkins' vehicle showing a bullet holes, including a hole in the windshield, and (iv) Thompkins' and Kuszmaul's statements corroborated each other and were made under penalty of making materially false representations because they were given to Agent Sondgeroth. Because of the corroboration of these statements, the Court holds that the hearsay statements have sufficient indicia of reliability. See United States v. Wilson, 485 F. App'x 109, 112 (6th Cir. 2012) (finding that corroboration of witnesses' statements provided demonstrated reliability of officer's testimony at sentencing hearing). These hearsay statements may, therefore, be used for purposes of establishing Defendant's conduct for purposes of scoring the sentencing guidelines.

    **B. Guidelines Application**

The Government argues that section 2K2.1(c)(1), with its cross-reference to section 2X1.1, should be utilized to establish a higher guideline range because Defendant's conduct amounted to an attempted murder or, at a minimum, a felonious assault. The Court agrees.

Section 2K2.1(c)(1) provides, in pertinent part:

5

> If the defendant used or possessed any firearm or ammunition in connection with the commission or attempted commission of another offense, or possessed or transferred a firearm or ammunition with knowledge or intent that it would be used or possessed in connection with another offense, apply-- (A) § 2X1.1 (Attempt, Solicitation, or Conspiracy) in respect to that other offense, if the resulting offense level is greater than that determined above . . .

U.S.S.G. § 2K2.1(c)(1).

In United States v. Craddock, 418 F. App'x 464 (6th Cir. 2011), the Sixth Circuit interpreted this guideline in a felon-in-possession case. The court stated that "use of possession of a firearm in connection with another offense also triggers the cross-reference provision in 2K2.1(c)(1)(A), which instructs the district court to apply the offense level from the guideline for the other offense if it is greater than the offense level from the firearm guideline in § 2K2.1." Id. at 466. In order to determine the offense level for the cross-referenced guideline, section 2K2.1(c)(1)(A) directs courts "to the provision for attempts, solicitations, or conspiracies in § 2X1.1, which, in turn, refers the district court to the guidelines for the substantive offense." Id. See also United States v. Taylor, 314 F. App'x 872, 875-876 (7th Cir. 2009) (holding that section 2K2.1(c)(1)(A) mandates the use of the higher offense level, not the offense level determined by referencing section 2K2.1(b)(6)); United States v. Orozlo, 403 F. App'x 399, 400-401 (11th Cir. 2010) ("The guideline for attempt, solicitation, and conspiracy, [section] 2X1.1, is applied if the defendant used or possessed any firearm in connection with another felony offense and if the resulting offense level is greater than that determined under section 2K2.1.") (bracketed text added and quotation marks omitted).

Under these principles, the Court rejects Defendant's argument that section 2K2.1(b)(6) applies. That guideline would provide a lower base offense level than the offense level under

6

sections 2K2.1(c) and 2X1.1[1] Def.'s Mem. at 14-16. Instead, the Court looks to section 2X1.1, which states that "[w]hen an attempt . . . is expressly covered by another offense guideline section, apply that guideline section." U.S.S.G. § 2X1.1(c). As noted above, the Court credits the version of events recounted by Ford and Sondgeroth and determines that the "substantive offense" here is attempted second degree murder. Craddock, 418 F. App'x at 466. According to section 2X1.1(c), the Court should apply the guideline section for second degree murder, which is section 2A2.1. United States v. Sanders, 472 F. App'x 376, 381 (6th Cir. 2012) (applying section 2A2.1 for sentencing in a felon-in-possession case).

Depending on the degree of murder, the base offense levels are 33, for first degree murder, or 27, for second degree murder. U.S.S.G. § 2A2.1(a)(1)-(2). Application note 1 explains that first degree murder "means conduct that . . . would constitute first degree murder under 18 U.S.C. § 1111." Title 18 U.S.C. § 1111(a) defines murder as "the unlawful killing of a human being with malice aforethought." First degree murder includes a "willful, deliberate, malicious, and premeditated killing," as well as killings involving circumstances not relevant here. Id. "Any other murder is murder in the second degree." Id.

Here, the evidence presented at the sentencing hearing established attempted murder because the element of malice aforethought was established. The evidence demonstrates convincingly that Defendant intended to kill Thompkins by firing shots at him. The intent to kill satisfies the malice standard. Sanders, 472 F. App'x at 381 ("Federal law defines second degree murder as killing with malice aforethought, a mental state that includes intent to kill."). In any event, Defendant's conduct amounted to a "gross deviation from the standard of care," such that

---

[1] Section 2K2.1(b)(6) provides for either a base offense level of 18, or if the base offense level is higher, an increase in four levels. Pertinent conduct that triggers section 2K2.1(b)(6) involves a defendant who "[u]sed or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense."

the Court concludes that the Defendant must have been "aware of a serious risk of death or serious bodily injury." United States v. Milton, 27 F.3d 203, 206 (6th Cir. 1994) (defendant's firing shots at occupied vehicle amounted to attempted second degree murder because conduct amounted to gross deviation from standard of care).

However, the evidence is not sufficient to establish premeditation. The evidence shows that Defendant's intent to kill may not have been formed all that long before he fired the shots. Ford's testimony revealed that Defendant confronted Thompkins about some speakers, but did not immediately fire his weapon. 10/1/13 Tr. at 15. Only after Thompkins had escaped in his vehicle did Defendant open fire. Id. at 45, 47-48. It seems as likely as not that Defendant's initial intent in orchestrating the confrontation was to frighten Thompkins or punish him for allegedly taking Defendant's speakers or to force their return. But the evidence does not preponderate in favor of the conclusion that Defendant had initially planned a murderous assault. Because the intent to kill may only have been formed shortly before the killing was attempted, the Court cannot conclude that premeditation was established. United States v. Delaney, 717 F.3d 553, 556 (7th Cir. 2013) ("In contrast to malice aforethought, premeditation requires that 'an appreciable time elapse between formation of the design and the fatal act within which there is, in fact, deliberation.'") (quoting Fisher v. United States, 328 U.S. 463, 469 n.3 (1946)). Therefore, Defendant's conduct amounted to attempted second degree murder.

### IV. CONCLUSION

For the reasons set forth above, the Court overrules Defendant's objections. Defendant's conduct for purposes of sentencing constituted "another offense," i.e., attempted second degree murder. The base offense level for attempted second-degree murder is 27, see U.S.S.G. § 2A2.1, a level greater than those set forth under the felon-in-possession guideline of section 2K2.1. See

U.S.S.G. § 2K2.1 (listing base offense levels from 6 to 26). Therefore, the Court will score Defendant's base offense level at 27.

SO ORDERED.

Dated: January 21, 2014  
      Flint, Michigan

s/Mark A. Goldsmith  
MARK A. GOLDSMITH  
United States District Judge

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 21, 2014.

s/Deborah J. Goltz  
DEBORAH J. GOLTZ  
Case Manager

9